```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
UNITED STATES OF AMERICA,          :
                                   :
         - against -               :         16-CR-167(LAP)
                                   :
JONATHAN WEEKS,                    :
                                   :
                   Defendant.      :
-----------------------------------x
```

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

Before the Court is Defendant Jonathan Weeks's letter motion, dated April 1, 2020, which requests release pursuant 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic (the "Motion") (Dkt. no. 328). For the reasons described below, the Defendant's motion is denied.

**I.  Background**

On or about July 25, 2016, the Defendant was charged in a 12-person superseding indictment for participating in a drug-trafficking organization that operated in and around the New York City area. The Defendant was charged in two counts: conspiracy to distribute and to possess with the intent to distribute 5 kilograms and more of cocaine, 1 kilogram and more of heroin, and 280 grams and more of crack cocaine, in violation of Title 21, United States Code, Sections 841(b)(1)(A) and 846 (Count One); and, possession of a firearm in furtherance of the narcotics

conspiracy, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i) (Count Three). (Dkt. no. 47.)

The investigation revealed that beginning at least in or about 2013 through in or about 2016, the Defendant was a mid-level dealer of crack cocaine in the Lower East Side. (Presentence Investigation Report, dated October 17, 2018 ("PSR") ¶ 29.) At times, the Defendant also supplied other drug dealers with crack and cocaine, to be cooked into crack cocaine, for resale in the Lower East Side, and at other times, for a cut, he facilitated those retail dealers to get drugs from his main supplier. (Id.) During the conspiracy, Defendant also possessed firearms and arranged the sale of at least one firearm. (Id.) Also prior to his arrest on September 12, 2016, while he was a fugitive, he engaged in continuing efforts to deal drugs and he publicly posted a co-defendant's photograph on Facebook in an attempt to out that person as a cooperating witness. (PSR ¶ 36.)

On December 11, 2018, the Defendant pled guilty to a lesser-included offense of Count One of Indictment S1 16 Cr. 167 (LAP), and admitted to participating in a conspiracy to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. (PSR ¶ 6.) Pursuant to a plea agreement, the Defendant admitted he was responsible for distributing at least 280 grams but less than 840 grams of cocaine base and that he was responsible for possessing a firearm in furtherance of the narcotics conspiracy. (Id.; see also PSR ¶ ¶ 42, 43.) This

resulted in a total offense level of 29, which the Court recognized "accurately reflects the nature and circumstances of the offense." (Sent. Tr. 19; see also PSR ¶ 51.)

The Defendant had seven prior adult criminal convictions, including one which arose from the possession of a loaded firearm, and another arising from an attempted robbery. (PSR ¶¶ 54-58.) As a result, the Defendant was in Criminal History Category VI, which as the Court noted at sentencing "is the highest category, and unfortunately, he earned his way there fair and square." (Sent. Tr. 19; see also PSR ¶ 74.)

On October 23, 2018, the Court imposed a sentence of 60 months' imprisonment, a significant downward variance from the advisory Guidelines range of 151 to 188 months' imprisonment, but still what the Court considered "clearly a serious sentence" which was "required to reflect the seriousness of the offense." (Dkt. no. 273; PSR ¶ 138; Sent. Tr. 19-20.) The Court primarily varied downward because of the Defendant's "hard work" at the MCC during his pretrial detention, his dedication to his family, his aspirations upon release, and the Court's belief that a longer sentence was not needed for specific deterrence or to protect the community in light of his "turning his life around," while at the MCC. (Sent. Tr. 19-20.)

The Defendant is currently housed at FCI Fairton in New Jersey, and his term of incarceration is set to expire on December 15, 2020. According to the Federal Bureau of Prisons,

3

("BOP"), he is scheduled to be released to a Residential Reentry Center/halfway house on June 4, 2020.[1]

On March 22, 2018, Anthony Cecutti, Esq., on the Defendant's behalf, filed a request to FCI Fairton that "[i]n light of the country's national crisis, and the critical importance to depopulate prisons to protect inmates and staff, and the community, it is respectfully requested that the BOP immediately release [the Defendant] to a halfway house or possibly to home confinement." (Motion, Ex. D.) His request did not raise any health concerns specific to the Defendant. The Government's understanding is that the BOP has not yet responded to the Defendant's request.

On April 1, 2020, the Defendant filed the instant Motion, similarly not raising any health concerns specific to the defendant. Rather, the Defendant makes generalized, albeit serious, arguments that "[i]t is dangerous for [the Defendant] to remain incarcerated because of the COVID- 19 pandemic." (Motion at 2.) The Defendant's Motion requests that the Court "reduce [the Defendant's] sentence to time served, with a period of home confinement while on supervised release." (Id.)

---

[1] The Defendant's motion states that he is scheduled to be released on June 3, 2020 from FCI Fairton (Motion at 2); however, the Government notes that its information received from BOP's Northeast Regional Office indicated a release date of June 4, 2020.

4

## II. Weeks Has Not Demonstrated Extraordinary and Compelling Reasons For His Release

### A. Weeks, the BOP, and COVID-19

Jonathan Weeks is 38 years old. (PSR ¶ 79.) According to the PSR, at the time, "the Defendant described his overall health as 'great.' He reported no history of serious illnesses or medical conditions," and he was "not presently under the care of a doctor or taking any prescription medication." (PSR ¶ 110.)

The Defendant suggests, without offering any evidence, that the BOP and FCI Fairton are unprepared for an COVID-19 outbreak, that they are not taking seriously the pandemic, and that the "BOP has known about the risk of COVID-19 for well over 30 days and has done little to adequately protect the health and safety of inmates." (Motion at 4, 6.) To the contrary, as set out at length in the Government's papers, the BOP has made significant efforts to respond.

These measures have proved quite successful so far. Indeed, as of April 6, FCI Fairton – where Jonathan Weeks is housed – reported no inmates or staff who tested positive for COVID-19.[2]

### B. Applicable Law

The Court assumes without deciding that it has the power to waive the requirement of exhaustion of administrative remedies.

Under Section 3582, the Court only "may reduce the term of imprisonment . . . after considering the factors set forth in

---

[2] Available at https://www.bop.gov/coronavirus/index.jsp last viewed on April 6, 2020, at 9:22 p.m.

section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." See 18 U.S.C. § 3582(c)(1)(A); see also 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. That section provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," id. § 1B1.13(1)(A); "the Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3).

Regardless of the theory of "extraordinary and compelling reason" that a defendant proceeds under, the 18 U.S.C. § 3553(a) factors are relevant to whether compassionate release is warranted. See 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of the motion, the Defendant bears the burden of proving that "extraordinary and compelling reasons"

exist. See, e.g., United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013).

**C. Discussion**

Weeks has not set forth extraordinary and compelling reasons for him to be released early. All he has done is to note that he is in prison and there is a COVID-19 outbreak nationwide. That is not enough. Weeks does not suffer from any medical conditions that places him particularly at risk for COVID-19, and he has proffered nothing to indicate that he falls into the narrow band of inmates who are "suffering from a serious physical or medical condition," "that substantially diminishes the ability of the Defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover." See U.S.S.G. § 1B1.13, application note 1(A). Although the health concerns from COVID-19 are undoubtedly serious (for inmates and non-inmates alike), Weeks has proffered nothing more than conjecture about how FCI Fairton has failed to address the COVID-19 crisis appropriately, much less how he is so uniquely vulnerable such that this Court should reduce his sentence. See United States v. Raia, No. 20-1022, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison

7

alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Instead of focusing on health concerns specific to the Defendant (because they do not exist), the Defendant's submission primarily relies on his efforts to "grow and excel," while at FCI Fairton, through vocational training and his work as an orderly. (Motion at 2.) Although those efforts (albeit unsupported by any documentation from BOP, or otherwise) are indeed admirable, they are not grounds for release under Section 3582(c)(1)(A). See United States v. Lisi, No. 15 CR. 457 (KPF), 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020) (finding that "rehabilitation of the Defendant" did not raise "an extraordinary and compelling reason for compassionate release"). That is because "rehabilitation of the Defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13, Application Note 3; see also 28 U.S.C. § 994(t).

Lastly, Weeks also has not explained how he would be safer outside of prison at his partner's home in New York City, where authorities could not enforce isolation and quarantines, than in prison, where FCI Fairton, through strict adherence to safety measures, has managed to keep its COVID-19 rate below that of New York City.

**IV. Conclusion**

Because Mr. Weeks has not carried his burden of establishing "extraordinary and compelling reasons" for his release, his motion (dkt. no. 328) is denied.

SO ORDERED.

Dated:   New York, NY
         April 14, 2020

                                         _____
                                         Loretta A. Preska
                                         Senior United States District Judge